**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES CRISTOFOLETTI, ET AL., | |
| Plaintiffs, | Nos. 23 CV 1318 & 24 CV 3435 |
| v. | District Judge Kness |
| TRANSFORM SR LLC, ET AL., | Magistrate Judge McShain |
| Defendants. | |

## ORDER

Pending before the Court are six discovery motions filed by plaintiffs seeking the production of documents and deposition testimony from defendants Transform SR Brands, LLC, Transform SR Brands Management, LLC, and Transform SR, LLC (collectively, Transform) and third party LG Electronics U.S.A., Inc. (LG USA). [89, 90, 94, 95, 106, 124, 125, 131, 132]; [1] in Case No. 24 CV 3435.[1] The motions are fully briefed, and the Court held a motion hearing on October 1, 2024. [155, 156]. For the following reasons, the motions are denied.

## Background

This is a proposed class-action case in which plaintiffs claim that Transform and its predecessor-in-interest, Sears, sold defective refrigerators. [15] at ¶ 1.[2] Plaintiffs contend that one component of the refrigerators–the linear compressor–had a defect that caused the refrigerators to stop their cooling function prematurely. [*Id.*] at ¶¶ 1, 6-7. The refrigerators at issue, which were sold under the Kenmore brand, [*id.*] at ¶ 1, were "designed and made by non-party LG Electronics," [*id.*] at ¶ 33, a foreign corporation based in South Korea (LG Korea). LG USA purchased the

---

[1] Bracketed numbers refer to entries on the district court docket in Case No. 23 CV 1318, unless otherwise indicated. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The Court's resolution of the pending motions has required the Court to review and discuss multiple sealed filings, but the Court has attempted to avoid unnecessary discussion of the parties' propriety business information. To the extent the Court has discussed such material, however, the Court has done so because it is necessary to explain the path of its reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

[2] In 2019, Transform's parent company purchased the assets of Sears Holding Corporation while Sears was involved in bankruptcy proceedings. [15] at ¶¶ 4, 26.

refrigerators from LG Korea and distributed them to retailers in the United States, including Sears and Transform. [129-1] 2, at ¶¶ 6-7.

At issue in the pending motions to compel are four broad categories of information. From Transform, plaintiffs primarily seek the production of specifications, diagrams, and schematics for the linear compressors; documents sufficient to show design changes made to the linear compressors; parts lists; and a master table showing which linear compressors were installed in which models of refrigerators. *See* [89] 7-9; *see* also [89-1] 8-10 (relevant interrogatories and responses); [90-3] 3 (relevant request for production (RFP)). Plaintiffs also seek Rule 30(b)(6) deposition testimony from LG USA regarding its efforts to confirm that the refrigerators would keep food at appropriately cool temperatures; the linear compressor's "Cooling Problems," including any design or part changes made to address such problems; the design of the linear compressors installed in the refrigerators; and any design variations among the refrigerators that LG USA believes could result in a variation in the likelihood that a compressor would fail. *See* [95] 8-9; [124] 6-7; *see also* [125-3] 1 (list of Rule 30(b)(6) topics). Plaintiffs have also moved to compel Transform to produce any insurance policies that obligate an insurer to satisfy a judgment entered against Transform or to reimburse Transform for payments it makes to satisfy such a judgment. [132] 8-9. Finally, plaintiffs seek so-called "cloned discovery" from LG USA. That motion demands that LG USA produce all discovery–including all expert reports, all documents cited or relied on by any expert in a report, all deposition transcripts of and declarations from fact witnesses, and all other documents–produced in two previous lawsuits against LG USA that sought damages associated with the installation of linear compressors in Kenmore-branded and LG-branded refrigerators. *See* [1] 13-16, Case No. 24 CV 3435 (relevant RFPs); *see also* [124] 7.

The Court addresses plaintiffs' motions in the order in which they were filed. The Court then addresses the motion to compel cloned discovery, which was filed in Case No. 24 CV 3435.

## Legal Standard

"In ruling on a motion to compel, the discovery standard set forth in Rule 26(b) applies." *Mendez v. City of Chicago*, 18-cv-6313, 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14, 2020). Rule 26 "governs the scope of civil discovery and allows parties to obtain discovery regarding any matter that is: (1) nonprivileged; (2) relevant to any party's claim or defense; and (3) proportional to the needs of the case." *Barnes-Staples v. Murphy*, Case No. 20-cv-3627, 2021 WL 1426875, at *2 (N.D. Ill. Apr. 15, 2021). "[T]he resolution of discovery disputes is committed to the Court's extremely broad discretion." *Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F. Supp. 3d 1044, 1046 (N.D. Ill. 2018).

## Discussion

### I. Motion to Compel Production of Technical Information from Transform or, Alternatively, LG USA [89, 90]

Plaintiffs' first motion to compel seeks an order compelling Transform to produce documents relating to the design and manufacture of the linear compressors and Kenmore-branded refrigerators. *See* [89] 7-9.

After Transform was served with plaintiffs' discovery requests for these documents, Transform performed what it describes as a "diligent search" and produced all documents in its possession, custody, or control that were responsive to Plaintiffs' requests for production," including RFP 2, the specific request at issue. [100] 9. This production included, *inter alia*, a parts list, refrigerator owner's manuals, service manuals with exploded parts diagrams[3] and schematics, and training materials. [160] 3 n.1. Transform further represents that it responded to the interrogatories at issue (Interrogatories 7 and 13) by informing plaintiffs that (1) it "does not have in its possession, custody, or control a record that correlates LG's linear compressor design changes to model numbers, serial numbers, or manufacturing dates"; (2) "it did not manufacture or design the LG Linear Compressor at issue and did not make any changes thereto"; (3) a document that Transform previously produced during discovery reflects "certain historical changes made to the LG Linear Compressor from 2015 through 2018"; and (4) it does not know whether its predecessor-in-interest (Sears) made any changes to the linear compressor. [100] 10 (internal quotation marks omitted).

In response to Transform's contention that it does not have any additional responsive documents in its possession, plaintiffs insist that Transform has "control" over these documents because it has the legal right to obtain them from either LG USA or another LG entity, LG Electronics Alabama, Inc. (LG Alabama). Plaintiffs rely on five contracts that have been produced during discovery: the September 2006 Uniform Terms and Conditions agreement between Sears and LG USA (the UTC Agreement) [89-9]; the May 2008 Alliance Agreement between Sears, LG USA, and LG Korea (the Alliance Agreement) [89-11]; the October 2018 Supply Agreement between Sears and LG USA (the Supply Agreement) [89-12]; the June 2019 Parts Supply Agreement between Transform and LG USA (the 2019 Parts Supply Agreement) [116-1]; and the November 2020 Parts Supply Agreement between Transform and LG Alabama (the 2020 Parts Supply Agreement) [116-2]. Plaintiffs also argue that, if the Court finds that Transform does not have a legal right to obtain the documents at issue from LG USA or LG Alabama, the Court should find that LG USA has a contractual right to obtain at least a subset of these documents from its South Korea-based parent entity, LG Korea. [89] 15-16. Specifically, plaintiffs

[3] An exploded parts diagram is a visual representation of a part that shows detailed information about the part's subcomponents. [89] 13 n.7.

contend that LG USA has the right to obtain model and part numbers for the linear compressors and "[t]echnical [d]iagrams sufficient to understand the design" of the compressors from LG Korea. [*Id.*].

Under Rule 34, a party must produce information that is in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "On the issue of control, it is well-settled that a party need not have actual possession of the documents to be deemed in control of them; rather, the test is whether the party has a legal right to obtain them." *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004) (internal quotation marks omitted). "Courts have routinely held that a party controls records within the meaning of discovery if it has a contractual right to access those records." *MSP Recovery Claims, Series LLC v. Mallinckrodt ARD, Inc.*, Case No. 20 CV 50056, 2020 WL 3618679, at *2 (N.D. Ill. July 2, 2020) (internal quotation marks omitted). "The determination of whether an entity has control over documents under Fed. R. Civ. P. 34(a) is a very fact specific inquiry that is made within the district court's discretion." *Ledesma v. Marriot Int'l*, Case No. 18 CV 3947, 2023 WL 2814762, at *2 (N.D. Ill. Apr. 6, 2023) (internal citations and quotation marks omitted).

### A. Transform's Contractual Right to Obtain the Documents

The Court concludes that none of the contracts at issue gives Transform a legal right to obtain documents relating to the design and manufacture of the linear compressors from LG USA or LG Alabama.

#### 1. Expired Contracts

First, the UTC Agreement and the Alliance Agreement have expired and been superseded by other contracts.

The UTC Agreement was terminated and superseded by the Supply Agreement, which provides that "[t]he parties hereto note that any and all agreements existing between LG Electronics, Inc., a Korean corporation, LG Electronics USA Inc., and Buyer, Sears Roebuck and Co., a New York corporation, * * * and any other subsidiary, parent, or affiliate of Buyer, dealing with the development, manufacture, sale and service of Kenmore branded home appliances, are meant to be terminated and superseded by the terms of this Agreement to the extent that they apply to such Kenmore branded home appliances, except as specifically provided otherwise herein." [89-12] 2 (internal emphases omitted). While the Supply Agreement provides that certain provisions in the parties' previous contracts would survive the termination of that contract, the section of the UTC Agreement relied on by plaintiffs–section 7.2, *see* [89] 12-13–is not included in the Supply Agreement's survival clause. *See* [89-12] 19. Transform thus has no right to obtain any documents from LG USA under the UTC Agreement.

The Alliance Agreement was also superseded by the Supply Agreement. As just seen, the Supply Agreement was intended to "terminate[ ] and supersede[ ]" "any and all agreements" between Sears, LG Electronics, and LG USA that involved Kenmore-branded appliances. [89-12] 2. To be sure, the Supply Agreement had a carve-out for "Product sold on or prior to December 31, 2018," and for those products the parties agreed that the Alliance Agreement "will continue to govern the Parties [*sic*] relationship with respect to Parts and Service until such time as the Parties execute a new agreement on Parts and Service." [*Id.*]. But the 2019 Parts Supply Agreement states that "Product and Parts sold to Sears . . . or [Transform] under the Alliance Agreement . . . prior to the effective date" of the 2019 Parts Supply Agreement "shall be treated as having been sold to [Transform] for all purposes under this Agreement[.]" [116-1]. Finally, the 2020 Parts Supply Agreement defines the Alliance Agreement as a contract that was "previously superseded by the Product Agreement" and clarifies–"for the avoidance of doubt"–that LG Electronics Alabama "is not bound by the Alliance Agreement." [116-2] 2. Accordingly, the Alliance Agreement does not give Transform the right to obtain responsive documents from LG USA or LG Alabama.

### 2. Surviving Provisions in the Supply Agreement and Parts Supply Agreements

Second, while certain provisions in the Supply Agreement and the 2019 and 2020 Parts Supply Agreements remained in effect after those contracts expired, none of these contracts grants Transform the right to obtain the design and manufacturing documents that plaintiffs seek.

#### i. Supply Agreement

The Supply Agreement expired on December 31, 2020. *See* [89-12] 14. But the agreement also provided that certain of LG USA's contractual obligations would "continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement[.]" [*Id.*] 19. Plaintiffs point to two such surviving obligations as granting Transform the right to obtain the documents at issue: one relating to "Changes to Specifications" in Section 11.E of the Supply Agreement, and one relating to the parties' duties under Section 7.A to collaborate on quality improvement plans. *See* [89] 12-13. The Court disagrees.

Section 11.E states that LG USA "will obtain [Sears's] prior written approval of any change in the manufacturing location, parts, materials or design or any other Specification for a [Sears] Branded Product which could impact product price, legal compliance, quality or the dependability of the long term supply chain for the [Sears] Branded Product[.]" [89-12] 12. This provision simply obligated LG USA to secure written approval from Sears before LG USA made certain changes to its manufacturing process for Sears-branded products. At best, this provision suggests

that LG USA obtained from Sears written approval of changes made to a part or design–and thus that, to the extent Sears had ever pre-approved such changes, LG USA could produce the written pre-approvals to plaintiffs.[4] The fact that Sears/Transform had the right to pre-approve certain changes to the design and manufacturing process does not, contrary to plaintiffs' apparent argument, imply that Sears/Transform possessed or could demand that LG USA provide it with any and all design and manufacturing documents related to those changes. Nothing in the Supply Agreement says that LG USA would supply this information to Sears/Transform, and, for all that the record before the Court shows, it is equally possible that LG USA simply described a proposed change and asked for approval without handing over detailed design or manufacturing information. Section 11.E does not give Transform control over the documents that plaintiffs seek.

Section 7.A of the Supply Agreement provides that the parties "will work in good faith together to improve the quality of Sears Branded Products," they "will collaborate on the development and execution of quality improvement plans," and LG USA will, "[*f*]*or the plans* . . . provide material and information (e.g., expected SIR improvement, schedule, and testing results) that supports the successful realization of the improvement plans." [89-12] 4 (emphasis added). The Court understands this provision as establishing the parties' obligations to collaborate on "quality improvement plans" and, with respect to "the plans," defining LG USA's obligation to provide "material and information" that would help the parties effectuate those "improvement plans." Critically, however, plaintiffs have offered no evidence that LG USA and Transform have collaborated or are currently collaborating on any "quality improvement plans" that would trigger LG USA's obligation to "provide material and information" to Transform. Accordingly, Section 7.A does not give Transform the right to obtain the documents at issue.

### ii. Parts Supply Agreements

The 2019 Parts Supply Agreement and the 2020 Parts Supply Agreement expired, respectively, on December 31, 2020 and December 31, 2022. *See* [116-1] 11; [116-2]. Plaintiffs rely on two identical provisions that appear in the 2019 and 2020 Parts Supply Agreements and that, pursuant to each contract's survival clause, remained in force after the agreements expired. Those provisions state that:

> At no cost to Parts Source [Transform], Seller [LG USA in the 2019 agreement and LG Alabama in the 2020 agreement] shall make reasonable efforts to make available to Parts Source all technical information about the Parts and Products, including parts, service and

---

[4] Notably, Transform represents that "[a]ny such written approvals received by Transform pursuant to the Supply Agreement . . . predated Plaintiffs' Complaint by about two years and, to the extent such records were in Transforms [sic] possession and responsive, would have been produced to Plaintiffs." [100] 15-16.

> owner's manuals (in English and Spanish), Training materials, Parts diagrams, schematics, and Parts lists with pricing (collectively, "Technical Information").

[116-1] 5; [116-2] 4.

Contrary to plaintiffs' arguments, these provisions do not provide Transform with a presently enforceable right to obtain design and manufacturing information about the LG-branded refrigerators or linear compressors.

To begin, the contracts establish only an obligation to provide Transform with "technical information about the Parts and Products," not design or manufacturing information. [116-1] 5; [116-2] 4. Plaintiffs argue that the contractual provisions at issue are broad, obligating the LG entities to provide "all" technical information and using the phrase "including but not limited to." *See Smith v. Dart*, Case No. 1:19-cv-6738, 2022 WL 823859, at *3 (N.D. Ill. Mar. 18, 2022) (under Illinois law, the phrase "including but not limited to" serves "to preface illustrative examples of the general classification, and not to limit its meaning") (internal quotation marks omitted); *Doniger v. Rye Psych. Hosp. Ctr., Inc.*, 122 A.D.2d 873, 877 (2d Dept. 1986) (same under New York law).[5] But the contracts provide specific examples of the "technical information" that LG agreed to share with Transform, and that information–"parts, service and owner's manuals," "Training materials," "Parts diagrams," "schematics," and "Parts lists"–all relate to the servicing and repair of the Kenmore-branded refrigerators. In the Court's view, this is unsurprising because Transform was a retailer and servicer of the refrigerators without an apparent need for the detailed design and manufacturing information that plaintiffs seek. While the Court recognizes that these categories of information are illustrative only, plaintiffs still need to demonstrate that the design and manufacturing information they seek "are similar to" the listed examples of "technical information." *City of Chicago v. Elm St. Prop. LLC*, 69 N.E.3d 390, 397 (Ill. App. Ct. 2016) ("Therefore, for the city to prevail on its argument to include a mortgage under the 'not limited to' language, it first had to demonstrate a mortgage is similar to the listed classes of interests."); *see also Bakash v. Human Rights Comm'n*, 711 N.E.2d 416, 422 (Ill. App. Ct. 1999) ("when a statute lists several classes of persons or things but provides that the list is not exhaustive, the class of unarticulated persons or things will be interpreted as those 'other such like' the named persons or things"). But plaintiffs have not explained why the parties to the Parts Supply Agreements would have decided that Transform, a servicer and retailer, would need diagrams, schematics, and other detailed design information relating to the linear compressors and/or refrigerators–and thus have a contractual right to demand such information from either LG USA or LG Alabama.

---

[5] The 2019 Parts Supply Agreement is governed by Illinois contract law, *see* [116-1] 12, while the 2020 Parts Supply Agreement is governed by New York contract law, *see* [116-2] 15. Plaintiffs have not provided the Court with any citations to either body of law in urging the Court to find that contracts at issue give Transform control over the documents they seek.

In any event, plaintiffs' interpretation of "all technical information" is definitively refuted by the very evidence that they urge the Court to consider (again, without reference to any relevant rules of contract interpretation or citation to any relevant authority): the testimony of LG Alabama's 30(b)(6) representative, Amanda Richey.

Richey testified that LG Alabama deployed a system called "GSFS" to house technical information that is accessible by "servicers." [163-2] 32, 31:4-5; 64, 63:12-14. This system gave LG Alabama access to, and the ability to share with servicers, "technical information" such as "exploded views of a product," "the parts that are associated with each product," "service bulletins," "schematics showing wiring diagrams," "service manuals," and "owner's manuals." [*Id.*] 32, 31:1-4; 64, 63:14-20. Richey specifically denied that LG Alabama had access to the design and manufacturing information at issue in plaintiffs' discovery requests. Asked by plaintiffs' counsel to describe "[w]hat does LG Alabama do to make sure it knows about the design changes that might happen," Richey responded that, "I mean, honestly, we've never been asked about design changes, so it's not something that we have or have access to." [*Id.*] 96, 95:11-13. Richey also clarified that "the technical information that we have available for a part is its description and the price," and "there's no other technical information of a part available to provide[.]" [*Id.*] 98, 97:7-10; *see also* [*id.*] 101-02, 100:10-101:2 (testifying that "information that identifies the design of linear compressors that were installed in the refrigerators" is "something we likely wouldn't have access to or be given access to"). This undisputed evidence establishes that the contractual term "all technical information" is not as broad as plaintiffs contend and does not encompass the design and manufacturing information that plaintiffs seek. *See Midwest Builder Distrib., Inc. v. Lord & Essex, Inc.*, 891 N.E.2d 1, 27 (Ill. App. Ct. 2007) ("conduct during the course of performance can aid in interpretation of a written contract by shedding light on the understanding between the parties"); *Big Tree Energy Partners v. Bradford*, 640 N.Y.S.2d 270, 273 (1996) ("The course of dealing and the course of performance between the parties to the contract support petitioner's position as to the meaning of the price term.").[6]

[6] Because the Parts Supply Agreements are contracts for the sale of goods, they are governed by the Uniform Commercial Code (UCC). The UCC permits a court to consider course-of-performance evidence to determine the meaning of contractual terms regardless of whether the contract is ambiguous. *See In re Kmart Corp.*, No. 02 B 2474, 2005 WL 3132460, at *6 (Bankr. N.D. Ill. Nov. 1, 2005) ("When the disputed contract is one for the sale of goods, the UCC allows the court to consider the course of dealing, course of performance and the usage of trade even when that contract is unambiguous."); *Midwest Builder Distrib.*, 891 N.E.2d at 27-28 (same); *see also Lion Oil Trading & Transp., Inc. v. Statoil Marketing & Trading (US) Inc.*, 728 F. Supp. 2d 531, 535 (S.D.N.Y. 2010) ("[W]hen considering a sale of goods contract under the U.C.C., the determination of a contract's meaning is not made in a vacuum. Rather, it is done in conjunction with evidence about course of dealing, usage of trade, and the parties' course of performance so long as that extrinsic evidence does not contradict the contract's language.").

Plaintiffs' contrary arguments lack merit. First, plaintiffs contend that Richey confirmed that LG Alabama "still ha[s] obligations to provide technical information" to Transform and that "nothing's changed" even though the 2020 Parts Supply Agreement has expired. *See* [153] 2. While plaintiffs are correct that Richey testified that LG Alabama recognizes that it has a current obligation under the 2020 Parts Supply Agreement, *see* [163-2] 63, 62:25-63: 4, Richey did not testify that that this obligation encompasses a duty to provide Transform with the specific materials that plaintiffs seek. As just discussed, Richey repeatedly denied that the design and manufacturing information that plaintiffs seek is within the term "all technical information." Second, plaintiffs argue that Transform has already produced design and manufacturing information of the kind plaintiffs seek in the instant motion, suggesting that Transform and/or the LG entities have control over additional design and manufacturing documents. *See* [153] 2-3. But these materials–"SBOM" or service bills of material documents (which are "closely related" to exploded view diagrams, *see* [163-2] 77, 76:2-20), an exploded view of a parts, and parts lists, *see* [153-3] 3-4; [153-4] 2-3–are just examples of the kinds of parts-related, rather than design- or manufacturing-related, documents that the LG entities routinely produced to Transform, and that Transform has already produced to plaintiffs.

Finally, plaintiffs deposed a former Transform product engineering manager, George Yaeger, and his testimony was to the same effect. Yaeger maintained what he called an "LG folder" in which he saved documents related to the Kenmore-branded refrigerators that he received. [161-1] 5-6, 234:4-235:2. Yeager testified that this folder contained only "[p]arts lists, PMT decks, service use and care guide manuals," and he did not testify that he had access to any of the detailed design or manufacturing information that plaintiffs seek. [*Id.*] 6, 235:16-17. This further evidence of the parties' dealings under the Parts Supply Agreements demonstrates that neither Transform nor the LG entities understood the term "all technical information" to encompass detailed design and manufacturing information about the linear compressors or Kenmore-branded refrigerators.

For these reasons, the Court finds that the Parts Supply Agreements do not give Transform control over the documents at issue.

### B. LG USA's Contractual Right to Obtain the Documents

The Court concludes that it lacks jurisdiction to decide plaintiffs' motion to the extent it seeks to compel LG USA to produce design and manufacturing documents.

Under Rule 45, subpoenas are issued from the court where the action is pending, but challenges to those subpoenas are to be decided by "the court for the district where compliance is required." Fed. R. Civ. P. 45(g). The place of compliance for a subpoena seeking the production of documents is "within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" Fed. R. Civ.

P. 45(c)(2)(A). "If a motion to quash a subpoena or a motion to compel compliance with a subpoena is filed in a court other than a court for the district where compliance is required, that court typically does not have jurisdiction to rule on the motion." *Bennett v. Hyatte*, No. 3:21-cv-550-RLM-MGG, 2022 WL 3644149, at *8 (N.D. Ind. Aug. 24, 2022).

Plaintiffs' motion seeks to compel LG USA to comply with a subpoena that was issued from the Northern District of Illinois and that sets New York City as the place of compliance. *See* [89] 15-16; *see also* [90-23] 2 (subpoena to LG USA).[7] Because the subpoena identifies New York City as the place of compliance, plaintiffs needed to file this motion in the Southern District of New York. *See Dou v. Carillon Tower/Chicago LP*, No. 18 CV 7865, 2020 WL 5502345, at *2 (N.D. Ill. Sept. 11, 2020) (noting that Rule 45 was amended to ensure "local resolution of disputes about subpoenas" and to require that "motions be made in the court in which compliance is required") (internal quotation marks omitted).

Plaintiffs argue that the Court has jurisdiction to decide the motion because LG USA has represented that it "would have consented to transfer [all subpoenas] to this Court." [124] 17. This contention lacks merit, legally and factually. Nothing in Rule 45 suggests that a court may assume jurisdiction over a subpoena-related motion to compel that was not filed in the court where compliance is required because the parties consented to such a procedure. *See Omnitracs, LLC v. Platform Sci., Inc.*, Case No. 20-cv-958-CAB-DDL, 2023 WL 2815363, at *1 (S.D. Cal. Apr. 6, 2023) ("notwithstanding [non-party's] apparent consent to have this Court adjudicate the parties' dispute, the Court finds that it lacks jurisdiction" over motion to compel compliance with subpoena because motion was not filed in court where compliance was required). Moreover, LG USA never stated that it consented to litigate this motion to compel in this Court. Rather, in a letter to chambers on which all counsel were copied, counsel for LG USA stated that, had plaintiffs filed this motion to compel in the Southern District of New York, "LG would have consented to transfer [the motion to compel] to this Court" under Rule 45(f).[8] Finally, this case is obviously distinguishable from the case on which plaintiffs rely, *Grecia v. Discover Fin. Servs., Inc.*, No. 17 C 7300, 2018 WL 11196598 (N.D. Ill. June 7, 2018). There the court found that two non-parties had effectively consented to litigate a subpoena-related dispute in the Northern District of Illinois by moving to quash the subpoena in that District, even though compliance was required in the District of Puerto Rico. *Id.*, at *2. Here, LG USA did not file a motion to quash but merely responded to plaintiffs' motion to compel after the undersigned entered a briefing schedule on the motion. Accordingly,

---

[7] The subpoena instructs LG USA that it is obligated to produce only those documents "that were not provided to [Transform]." [90-23] 8. Thus, to the extent that LG USA has any obligation to produce documents under this subpoena, that obligation encompasses only those documents that have not been previously produced to Transform.

[8] A copy of this letter will be placed on the public docket contemporaneously with the filing of this Order.

the Court lacks jurisdiction under Rule 45 to rule on the motion to compel as it relates to LG USA. *See Dou*, 2020 WL 5502345, at *2; *Bennett*, 2022 WL 3644149, at *8.

In the interests of judicial economy, the Court advises the parties and LG USA that, if plaintiffs refile this motion in the Southern District of New York and that court transfers the motion to this Court under Rule 45(f), the undersigned is likely to deny the motion for the following reasons. First, LG USA has represented to plaintiffs that it searched for documents that are responsive to plaintiffs' discovery requests and determined that it has no documents other than those "previously provided to [Sears] and/or [Transform], which are expressly excluded from the scope of the Subpoenas." [129-1] 2, at ¶ 5. Second, the Court sees very little merit (if any) in plaintiffs' argument that LG USA, a non-party, has "control" over the documents at issue and should be compelled to produce them because it can obtain them from LG Korea, its parent entity and another non-party to this suit. There is no evidence before the Court that LG USA has ever obtained such documents from LG Korea or that it has a contractual right to obtain such documents from LG Korea. The Court is likewise unpersuaded that LG USA has control over these documents under the rule of *LifeSpine, Inc. v. Aegis Spine, Inc.*, No. 19 CV 7092, 2021 WL 5415155 (N.D. Ill. Nov. 19, 2021). In that case, the court stated that, "[i]n the context of a parent-subsidiary relationship, courts decide whether a subsidiary has 'control' over documents in the hands of the parent by examining the closeness of the entities' relationship." *Id.*, at *2. But *LifeSpine* involved a subsidiary entity that was a party to the case. This case, in contrast, involves a non-party subsidiary that is entitled to greater protection from the undue burdens that can arise in discovery. *See, e.g.*, Fed. R. Civ. P. 45(d)(3)(A)(iv) (court must quash or modify subpoena that subjects a person to undue burden). Plaintiffs have not cited any case in which a non-party subsidiary was found to have control over documents in the possession of its non-party parent entity. Regardless, to the extent that the *LifeSpine* factors are relevant here, the Court is inclined to agree with LG USA that those factors suggest that LG USA does not have control over the technical and design documents at issue. *See* [128] 15-17.

For these reasons, plaintiffs' motion to compel Transform to produce information to which it is contractually entitled or, in the alternative, to compel third party LG USA to produce that information directly is denied with prejudice as to Transform and for lack of jurisdiction as to LG USA.

## II. **Motion to Compel LG USA to Comply with Rule 30(b)(6)** [94, 95] **and Motion to Compel Production of Documents from LG USA in Compliance with Plaintiffs' Amended Subpoenas** [106]

Plaintiffs' second discovery motion seeks to compel LG USA to produce a Rule 30(b)(6) deponent to testify on four topics relating to the refrigerators' cooling problems, the design of the linear compressors, and any design variations among models of refrigerators and linear compressors. *See* [95] 8-9. Plaintiffs' third discovery

motion seeks the same design and manufacturing documents as plaintiff's first motion. [106] 1-2. These motions arise out of an amended subpoena for documents and deposition testimony that plaintiffs issued in July 2024 from the Northern District of Illinois and that identifies Chicago as the place of compliance. *See* [94-2] 2. LG USA argues that the Court lacks jurisdiction over these motions because Chicago is not a proper place of compliance. [128] 9-10. The Court agrees.

LG USA has submitted a declaration from Adam Whobrey, a Senior Director of Product Management, establishing that LG USA is incorporated in Delaware and has its principal place of business in Englewood Cliffs, New Jersey. [129-1] 3, at ¶ 10. "[T]he district of compliance for a nonparty corporation is typically where the corporation is headquartered." *Secs. & Exch. Comm'n v. TCA Fund Mgmt. Grp. Corp.*, Case No. 20-21964, 2021 WL 9440378, at *1 (S.D. Fla. June 10, 2021); *see also Westfield v. Simpson*, No. 1:20-cv-1747-TWP-MG, 2022 WL 4131681, at *2 (S.D. Ind. Sept. 12, 2022) (same). Accordingly, Chicago is not a proper place of compliance because it is more than 100 miles from LG USA's headquarters. *See Burnett v. Wahlburgers Franchising LLC*, 16 CV 4602 (WFK (CLP), 2018 WL 10466827, at *2 (E.D.N.Y. Oct. 4, 2018) ("Therefore, the proper forum for the motion to compel would be in the district in California where the nonparty's headquarters are located, not where the files are to be produced."). Plaintiffs contend that the Court has jurisdiction because LG USA maintains permanent offices in Buffalo Grove and Lincolnshire, and its general counsel is registered to practice law at the Lincolnshire office. The Court rejects these arguments because LG USA is headquartered in Illinois, but in New Jersey. *See Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) ("despite Google having an office in Venice, the proper district to hear a motion to compel is where Google is headquartered"); *TCA Fund Mgmt.*, 2021 WL 9440378, at *1 (Southern District of Florida was not proper place of compliance, even though nonparty had a registered agent in the District, because "it does not appear [nonparty] is headquartered" in Florida).

Plaintiffs' motion to compel LG USA to comply with Rule 30(b)(6) and their motion to compel production of documents from LG USA in compliance with plaintiffs' amended subpoenas are denied without prejudice for lack of jurisdiction. In the interests of efficiency, the Court advises the parties and LG USA that, should plaintiffs refile this motion in the district where compliance is required and should that motion be transferred to this Court, the Court is inclined to deny the motion for the same reasons given above with respect to plaintiffs' first motion to compel.

## III. Consolidated Motion to Compel Discovery from LG USA [124, 125]

On August 1, 2024, the Court entered a minute order noting that plaintiffs had filed "multiple pending motions relating to the same document requests" and requesting the parties and LG USA to file a joint status report "to advise the Court whether any further briefing is necessary on plaintiff[s'] original motion to compel

[89], whether a briefing schedule is necessary for [the most recently filed] motion to compel [106], and whether a briefing schedule will be needed for the motion to compel that is pending in case no. 24 CV 3435." [107]. Plaintiffs advised that they intended to file a consolidated memorandum of law in support of their pending motions to compel discovery from LG USA, and that this memorandum "will supersede all prior memoranda of law submitted by Plaintiffs in support of the Motions." [113] 1-2. Rather than filing a consolidated memorandum, however, plaintiffs filed another discovery motion: a consolidated motion to compel discovery from LG USA. [124, 125]. In that motion, plaintiffs reiterate their arguments that LG USA should be compelled to produce design and manufacturing documents, a Rule 30(b)(6) deponent, and cloned discovery from the prior litigation involving the installation of the linear compressors in LG- and Kenmore-branded refrigerators.

For the reasons given in Sections I.B and II of this Order, the Court denies the consolidated motion for lack of jurisdiction to the extent it seeks to compel production of design and manufacturing documents and Rule 30(b)(6) testimony from LG USA. To the extent that the consolidated motion requests cloned discovery, the Court resolves that issue in Section V of this Order.

## IV. Motion to Compel Disclosure and Production of Insurance Information [131, 132]

Plaintiffs have also moved to compel Transform to produce any insurance policies that indemnify Transform in this matter, along with "related proof-of-insurance documents and any applicable written notices of termination" of those policies. [132] 6. Plaintiffs contend that Transform was required to produce any relevant insurance policies when it made its initial disclosures, but failed to do so. [*Id.*] 8-9. When plaintiffs served Transform with an RFP seeking the insurance policies, Transform stated that it could not produce the policies because they were in the possession of LG USA. [*Id.*] 10-11. Transform responds that its initial disclosures appropriately stated that it was not aware of any relevant insurance policies because it did not "have a copy of any Policy of Commercial General Liability covering liabilities related to Parts in its possession, custody, or control." [146] 8. Transform also contends that it conducted a search of the documents in its possession, custody, and control and "did not identify a copy of any relevant insurance agreement." [*Id.*] 7. Finally, Transform argues that it does not have a legal right to obtain copies of the insurance policies from LG USA. [*Id.*] 11-12. This is so, Transform maintains, because the contracts at issue required only that LG USA submit "proof of insurance"–rather than the insurance policy itself–to Transform. [*Id.*] 11.

The Court rejects plaintiffs' arguments that Transform's initial disclosures were deficient and that Transform improperly refused to respond to plaintiffs' RFP for insurance contracts. Plaintiffs rely primarily on the 2019 Parts Supply Agreement. *See* [132] 7-8. As relevant here, that agreement stated that LG USA "will

obtain and maintain . . . a policy or policies of Commercial General Liability Insurance covering liabilities relating to Parts." [132-2] 16. It also required LG USA to "submit proof of insurance evidencing such coverage in advance of or concurrent with its execution of this Agreement and upon each policy renewal date," and to give Transform at least 30 days' "prior written notice" before terminating such a policy. [*Id.*]. But nothing in this section of the Agreement, or in the remainder of the contract, required LG USA to provide Transform with the actual insurance policies. All that was required was that LG USA would (1) obtain a general commercial liability policy, (2) provide Transform with "proof of insurance" evidencing such coverage, and (3) provide written notice of its intent to terminate a relevant insurance policy. In line with this language, Transform represents that LG USA "satisfied its obligation regarding proof of insurance by providing 'certificates of insurance' (COIs) to Transform." [146] 6. Transform further represents that it searched the documents in its possession, custody, and control but "did not identify a copy of any relevant insurance agreement." [*Id.*] 7. Finally, while Transform represents that it "did identify some COIs relating to the Policy," it did not produce those documents because they are outside the scope of Rule 26(a)(1)(A)(iv)'s requirement that insurance policies be disclosed.

The Court agrees that the language of the 2019 Parts Supply Agreement disposes of plaintiffs' argument. Because the contract did not require LG USA to provide Transform with a copy of any insurance policies it might have obtained, the Court finds that Transform's statement in its initial disclosure that "it was not aware of any policies" was not improper. Furthermore, Transform's obligation under Rule 26(a)(1)(A)(iv) to produce insurance policies was "limited to the agreement" and "d[id] not require the production of any other document related to insurance," such as certificates of insurance. *Jump v. Montgomery Cnty.*, No. 13-cv-3084, 2015 WL 4530522, at *2 (C.D. Ill. July 27, 2015); *see also Native Am. Arts, Inc. v. Bundy-Howard, Inc.*, No. 01 C 1618, 2003 WL 1524649, at *1-2 (N.D. Ill. Mar. 20, 2003) (insurer's reservation-of-rights letters not required to be disclosed in initial disclosures). The COIs are not discoverable absent a showing that they are relevant, *see id.*, but plaintiffs have made no such showing. The Court reiterates that nothing in the contracts at issue gives Transform a right to obtain the insurance policies; it was entitled only to the certificate or other proof-of-insurance documents. Finally, plaintiffs' argument that Transform "should have the legal right to obtain [the] insurance policies" because the policies name Transform as a beneficiary is speculative and unsupported. *See Ledesma*, 2023 WL 2814762, at *3 ("The party seeking production of documents bears the burden of establishing the opposing party's control over those documents.") (internal quotation marks omitted).

For these reasons, plaintiffs' motion to compel disclosure and production of insurance information is denied. In the exercise of its discretion to manage discovery, the Court orders Transform to disclose to plaintiff, within seven days of the date of

this order, the identity of every insurer that has issued an insurance policy that is responsive to plaintiffs' requests for such policies.

## V. **Plaintiffs' Motion to Compel Cloned Discovery** ([1] in Case No. 24 CV 3435])

Finally, plaintiffs seek an order compelling LG USA to produce all discovery that was generated in two prior lawsuits that sought damages associated with the installation of LG-made linear compressors in LG-branded and Kenmore-branded refrigerators. [1] in Case No. 24 CV 3435 2-3; [124] 15-16. Opposing the motion, LG USA represents that it has already produced "the documents and portions of deposition testimony from the prior cases that relate to Kenmore-branded products," which are the same refrigerators at issue this case. [128] 18-19. LG USA contends that it properly withheld discovery materials from the prior lawsuits that relate only to LG-branded refrigerators because LG-branded refrigerators are not at issue here. [*Id.*] 19.

"Courts in this district disfavor 'cloned discovery' requests seeking all documents produced or received during other litigation or investigations." *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, Master Docket No. 21 C 305, 2023 WL 4181198, at *6 (N.D. Ill. June 26, 2023). "[C]loned discovery requesting all documents produced or received during other litigation or investigations, is irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the instant case." *Id.*, at *7 (internal quotation marks omitted). Because "there could be a number of reasons why documents appropriately requested and provided in another case–even if the subject of those cases seem to overlap–would be irrelevant or burdensome to produce in another case," a party "seeking documents produced in another matter ordinarily must do their own work and request the information they seek directly and must make proper requests describing the information in which they are interested." *Id.*

The Court agrees with LG USA that plaintiffs' request for cloned discovery is improper. To begin, plaintiffs have not explained why all discovery generated in the prior litigation relating to the LG-branded refrigerators is relevant to the claims and defenses in this case. The mere overlap in subject matter–here, the installation of similar or identical LG-manufactured linear compressors in LG- and Kenmore-branded refrigerators–is insufficient to warrant the production of cloned discovery. *In re Outpatient Med Ctr.*, 2023 WL 4181198, at *7; *see also Goro v. Flowers Foods, Inc.*, Case No. 17-cv-2580-JLS-JLB, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019) ("The propounding party cannot meet its burden to establish relevance, as the propounding party is not in a position to even know what they are actually asking for."). Moreover, as LG USA's counsel explained at the October 1 motion hearing, "[t]here are things in that production that have absolutely nothing to do with the compressor or Kenmore." [156] 29. As an example, counsel noted that the claims in

the prior lawsuits involved "what LG did for the marketing and sales of LG-branded refrigerators," [*id.*], and there is no obvious relationship between discovery materials relating to that marketing and sales and the claims in this case, which involve a different brand of refrigerator. The Court therefore finds that, apart from the failure to establish relevance, plaintiffs' request is overbroad on its face. Finally, during the motion hearing, the Court explored with the parties whether plaintiffs could possibly narrow their discovery request, and plaintiffs indicated that they would be open to meeting and conferring with LG USA about a narrowed request. The Court's denial of the pending motion to compel is without prejudice to the parties' ability to further meet and confer about a narrowed request for discovery materials produced in the prior litigation.

## Conclusion

Plaintiffs' motion to compel Transform to produce information to which it is contractually entitled or, in the alternative, to compel third party LG USA to produce that information directly [89, 90] is denied with prejudice as to Transform and for lack of jurisdiction as to LG USA. Plaintiffs' motion to compel LG USA to comply with Rule 30(b)(6) of the Federal Rules of Civil Procedure [94, 95] is denied for lack of jurisdiction. Plaintiffs' motion to compel production of documents from LG USA in compliance with their amended subpoena [106] is denied for lack of jurisdiction. Plaintiffs' consolidated motion to compel discovery from LG USA [124, 125] is denied for lack of jurisdiction as to the document requests and the 30(b)(6) deposition and moot as to the request for cloned discovery. Plaintiffs' motion to compel disclosure and production of insurance coverage [131, 132] is denied, but Transform is required to disclose to plaintiffs the identity of every insurer that has issued an insurance policy that is relevant to plaintiffs' requests for such policies within seven days of the date of this order. Plaintiffs' motion to compel production of cloned discovery ([1] in Case No. 24 CV 3435) is denied without prejudice to the parties' ability to further meet and confer about a narrowed request for the discovery materials produced in the prior litigation.

Heather K. McShain

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: October 22, 2024**